# Leeds *et al. versus* Lockwood *et al.*

In an action of ejectment a misdescription in the writ, of the land in controversy, may be amended by filing a new description, but such amendment cannot be permitted to relate back to the commencement of the action, and thus affect defendants whose rights have since accrued under the Statute of Limitations.

March 6th 1877. Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. MERCUR, J., did not sit in this case.

[Leeds v. Lockwood.]

Error to the Common Pleas of *Bradford county :* Of July Term 1875, No. 6.

Ejectment by Louisa C. Leeds and others against Edmund Lockwood and Hiram Luther.

The action was originally brought on the 10th of September 1861, and the writ was served on the 30th of the same month upon Edmund Lockwood and Myron Luther. The præcipe and writ contained this description of the land, for which the action was brought:—

"Beginning at the north-east corner of lot in possession of Alexander Lane and Jere Travers, thence south 103 perches to a post, thence north 45 degrees, west 44 perches, thence south 80 degrees, west 87 perches to a post, thence north 82 perches to a corner, thence east 108 perches to place of beginning, containing 50 acres, 60 perches, more or less."

No further steps were taken in the case until January 4th 1872, when an application was made to substitute certain parties in interest and to amend the description in the writ so as to read, " Beginning at a corner 108 7-10th rods east of the north-east corner of the Lane and Travers lot." It was conceded that the description in the writ did not touch the land in possession of Myron Luther, but by adopting that in the proposed amendment the description covered the land in controversy. It was alleged that it was the intention to bring the action for this land, and the misdescription was a mistake of the attorney who drew the præcipe.

Myron Luther filed an affidavit in the case substantially as follows:—

" That at the time of the commencement of this suit the said Hiram Luther was the minor son of said deponent, and was in possession under said deponent of land which lies immediately east of and adjoining the land covered by the writ of summons issued in this case, said deponent then holding said land under a lease. The land covered by said writ lies wholly west of a tract of land for which a patent was issued from the Commonwealth of Pennsylvania to Edmund Lockwood, on the 9th day of May 1870, in pursuance of a survey made October 16th 1839, on warrant dated October 5th 1839. That upon the 21st December 1866, said deponent purchased by contract of said Edmund Lockwood, part of the tract of land covered by said survey and warrant, containing about seventy-two acres.

Said deponent further saith, that in addition to his claiming said land under a legal title from the Commonwealth, he also claims to hold the land by adverse possession of those under whom he claims for such a length of time, as when added to his own possession will give him a good title under the Statute of Limitations, counting up to the time that the plaintiff's application was made to amend the description ; but said deponent is not certain that he can prove the

[Leeds *v.* Lockwood.]

twenty-one years' adverse possession before the commencement of this suit. The suit as brought and the writ covers no point of said deponent's land, nor of any lands of which he ever had any possession nor to which he laid any title or claim. To permit the amendment asked for to be made will be a relinquishment of all the land now covered by the writ; and extended to other lands, no part of which is now covered by the writ, and will cover lands of said deponent which he holds and claims to own both by possession and by legal title. Therefore, as said amendment would do great injustice to your deponent, and might defeat his title by possession, he earnestly protests against its allowance."

Upon the rule to show cause why the substitution of the parties in interest should and the amendment should not be made, the court, Streeter, P. J., in an opinion, said:—

" It seems to the court that this amendment would introduce a new cause of action. The description as filed runs round an entirely different lot. If the description indicated the lot, but was defective in some particulars, doubtless an amendment correcting the mistakes would be allowed. But it is proposed to change the description from one lot to another, and an entirely different lot. A suit is brought in 1861, for one form, and in 1872, it is proposed to change the action so as to embrace another form. I think this is going too far, especially when such amendment might destroy a title acquired under the Statute of Limitations. In Wright *v.* Hart's Adm'r, 8 Wright 455, it is said ' the plaintiff below could not amend his declaration so as to introduce a new cause of action ; and this is very especially true, where the new cause is so old as to be barred by the Statute of Limitations.' In this case, the plaintiff counted upon a promissory note, and many years afterwards was permitted to amend by declaring upon another rule, which, at the time of the amendment, was barred by the statute. I am not able to distinguish the two cases upon principle; and the amendment must, therefore, be refused, so far as it relates to the description. There can be no objection to the plaintiffs substituting the parties in interest. The first branch of the rule is made absolute, and the latter branch is discharged."

The plaintiffs excepted to this action of the court, and the trial subsequently proceeding (at which the above motion to amend was renewed and again refused) and resulting in a verdict for the defendants, the plaintiffs took this writ and alleged that the court erred in discharging the rule and not allowing the amendment.

*H. W. Patrick* and *Edward Overton, Jr.*, for plaintiffs in error.—If the description in the writ of the land for which the ejectment is brought be defective, the defect may be supplied by another description filed with leave of court: Sample *v.* Robb, 4 Harris 305. See also Donaldson *v.* Bank of Danville, 8 Id. 245.

[Leeds v. Lockwood.]

*H. Peet* and *Davies & Carnochan*, for defendants in error.—The question is not one of *amending* a misdescription, but whether having sued for one lot the plaintiffs shall be allowed to change their location, after eleven years have elapsed, and after the title of Myron Luther has become perfect by lapse of time, so as to include his premises.

Not only a new cause of action, but a new defendant would be introduced. Myron Luther had no claim of title at the commencement of this suit.

Mr. Justice GORDON delivered the opinion of .the court, May 7th 1877.

The court should have allowed the amendment asked for by the plaintiffs. The misdescription, no doubt, resulted from a mistake in commencing at the north-east corner of the Lane and Travers tract, instead of the north-east corner of the tract in controversy.

Even before the passage of the Acts of 1871 and 1872, a defect of this kind might have been cured by filing a new description : Sample *v.* Robb, 4 Harris 305. Since the date of those acts, amendments may be permitted in all cases, and at any stage of the proceedings. But as the amendment will necessarily substitute a tract of land entirely different from that described in the writ, it cannot be permitted to relate back to the commencement of the action, and thus affect the rights the defendants might otherwise have under the Statute of Limitations. The mistake, if mistake it was, arose from no fraud or default of the defendants, hence their rights must remain just as they are found at the time of the amendment, or as though the writ had issued at that date, or more correctly, at the date when the amendment was applied for. As was said by our brother MERCUR, in the case of Kille *v.* Ege, 1 Norris 102 : "Amendments, depriving the opposite party of any valuable right, shall not be allowed. Hence when the name of a person was added as plaintiff in ejectment after suit brought, it was held, that if at the time of the amendment, the title of the new party was barred by the Statute of Limitations, he could not recover;" citing Trego *v.* Lewis, 8 P. F.. Smith 463 ; Kaul *v.* Lawrence, 23 Id. 410.

With this qualification as to the effect of the amendment, we think it should have been allowed; for it would seem, in the language of the act, to be necessary for a proper decision of the case on its merits.

The judgment is reversed and a new venire is awarded.