# ERIE CITY IRON WORKS v. P. M. BARBER ET AL.

### ERROR TO THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY.

Argued March 22, 1887—Decided February 6, 1888.

1. In the view of the statutes of amendment, the cause of action is the particular matter for which suit is brought; and, when the object is, not to forsake this cause of action, but to effect a recovery on the merits which may not otherwise be reached, the amendment should be allowed.

2. While it is true that counts declaring for damages ex contractu may not be joined with counts for damages ex delicto, yet if on a trial under the plea of not guilty the court withdraw the counts ex contractu from the consideration of the jury, the defendant suffers no harm.

3. It it be not shown to have injuriously affected a trial on the merits, no

defect of pleading which could have been raised on demurrer will be held fatal to the judgment. The proper amendment will be considered to have been made.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 259 January Term 1886, Sup. Ct.; court below, No. 18 December Term 1887, C. P.

On November 8, 1877, an action in case was brought by P. M. Barber and A. B. Henderson, partners as P. M. Barber & Co., against the Erie City Iron Works. A narr. was filed on December 3, 1877, with three counts.

The first count set out that the plaintiffs owned and operated a steam lumber mill in Lycoming county, and the defendant company at Philadelphia were manufacturers and dealers in steam engines, boilers, etc.; that on February 18, 1874, the plaintiffs employed the defendants to construct for them a horizontal tubular boiler of three eighths inch thick flange iron for said mill for the sum of $1,300; that the boiler constructed and set up in the plaintiffs' mill "was carelessly, negligently and improperly made of an inferior quality of iron, to wit, C. H. iron, and not of flange iron," and that " by reason of the premises and of the said boiler being carelessly and negligently and improperly made and constructed of poor, inferior and worthless iron, the said boiler exploded, whereby the said boiler was utterly destroyed and made useless, and the said lumber mill of said plaintiffs, and the materials, lumber, steam engine and machinery therein " were destroyed.

The second count averred that the boiler was to be "a tubular boiler, shell of flange iron, three eighths inch thick, head one half inch thick, of best flange iron, straight seams, double riveted, the whole boiler to be well stayed and well made;" that the boiler constructed and set up " was carelessly, negligently and improperly made of C. H. iron of an inferior quality, and of less than three eighths of an inch in thickness, and not of flange iron;" following substantially the first count in other respects.

The third count averred that the boiler was to be as described in the second count; that the defendants " made a certain boiler, which said boiler was made and represented to

be made of C. H. iron, and not of flange iron," and that the defendants "falsely and maliciously represented to said plaintiffs that the said boiler so made and constructed and delivered was in every respect as good as the boiler so ordered, as aforesaid, and would safely carry 120 lbs. of steam, and that the only difference between the said boilers was in a name;" that the plaintiffs, relying upon the said representations, set up the said boiler in their mill; that the said boiler "was carelessly, negligently and improperly made of poor, inferior and worthless iron, and of less than three eighths of an inch thick, and not as warranted and represented by the said defendant," and that by reason of the premises, etc.

To this narr. the defendants pleaded not guilty, on September 24, 1880.

On January 10, 1882, a jury was called, and, eo die, the plaintiffs moved for leave to amend the several counts of the narr. in substance as follows:

First count.  That defendants were manufacturers of boilers, and were desirous that plaintiffs should purchase one made by them, and thereupon represented to them that it was a good and safe boiler, and fit and proper to be used and could be used with safety; that said boiler was equal in .quality to a boiler made of, to-wit: flange iron; that plaintiffs thereon purchased said boiler upon terms that it could be safely used in their lumber mill; breach, that defendants negligently and improperly conducted themselves in selling, preparing and manufacturing said boiler; that it was dangerous, defective, and wholly unfit and unsafe to use, and afterwards exploded, etc.

Second count.  That defendants being desirous plaintiffs should purchase a boiler of their manufacture, "fraudulently, falsely and deceitfully stated that said boiler was safe and fit for use, and was of as good quality as a boiler made of, to-wit: flange iron; that plaintiffs, believing this, purchased said boiler and placed it in their mill; that said boiler was greatly inferior to one made of flange iron, and was totally unfit and unsafe for use, as defendants knew, and said boiler did, by reason of the premises, explode, etc.

Third count.  That defendants, the manufacturers, being desirous that plaintiffs should purchase one of their boilers for use in plaintiffs' mill, in consideration of said purchase war-

ranted said boiler " to be equal to, to-wit: flange iron, and to be entirely fit and safe for use; " that plaintiffs, relying on said warranty, purchased said boiler for use in said mill; but defendants were guilty of a breach of duty, deceit and negligence in so as aforesaid warranting said boiler, because said boiler was, on the contrary, not equal to flange iron, and was entirely unsafe and unfit for use, of which defendants had notice ; that plaintiffs, confiding in said warranty, used said boiler in their mill, where said boiler, by reason of the premises, exploded, etc.

The defendants objected to the allowance of the amendments, (1) because they set forth a different cause of action from that counted on in the original narr.; and (2) that the statute of limitations had run against the cause of action set forth in the amendments.

The court, ALLISON, P. J., allowed the amendments.[1]

The defendants. then, by leave of court pleaded, causa actionis non accrevit infra sex annos.

The trial resulted in a verdict for the plaintiffs for $8,440. A judgment entered upon this verdict was reversed by this court: Erie City Iron Works v. Barber, 102 Pa. 156.

The record having been remitted, on April 11, 1883, on motion of plaintiffs' attorneys, leave was granted to amend the pleadings as follows :

By inserting in the third amended count, after the word " defendants," and before the word " warranted," the words " falsely and fraudulently." And by inserting before the word " warranty," and after the word " said," the words " false and fraudulent." And by inserting after the words " had then and there notice," the words " and well knew at the time of making the said warranty."

At a second trial on April 18, 1883, before PEIRCE, J., there was a verdict for the plaintiffs for $8,038. The judgment entered upon this verdict was subsequently reversed in this court: Erie City Iron Works v. Barber, 106 Pa. 126.

At a third trial on November 13, 1885, P. M. Barber, a plaintiff, testified, inter alia, that the boiler ordered having arrived he had an interview with Mr. Selden, the president of the defendant company, when the latter said they had not

made the boiler they agreed to make, and had sent him one of C. H. iron instead of flange iron: "I said, if the boiler we had at our place was as good as the one described in the Heathcote proposition, I would take it; if it was as good as the boiler we were to have. He said it was as good a boiler. . . . . He said it would carry 120 lbs. of steam. . . . . He said he would guarantee this boiler equal in every respect to the one I was to have." Mr. Selden, in behalf of defendants, testified, inter alia: "Q. When did you first know of the Heathcote proposition? A. I never heard of it until after the explosion occurred." Afterwards, the defendant company put in evidence a letter from their agent, Mr. Shearman, written before the boiler was ordered, stating to Selden that they must get below Heathcote's proposition to sell the boiler at all. Mr. Selden, referring to the interview with Mr. Barber, further testified: "I furthermore said to him that I considered C. H. No. 1 iron fully as good in the shell of a boiler of that kind as flange iron and in some respects better. . . . . I said materially that it was as good for the purpose as flange iron." On cross-examination: "Q. Have you no reason why C. H. No. 1 should be more suitable in boilers fired the other way, fire in contact with shell? A. Yes, I do know one reason—I know C. H. iron is a lower grade of iron; it should be a stronger boiler, fired as P. M. Barber & Co.'s was. . . . . Q. I ask you whether, in your judgment, C. H. No. 1 iron is the proper iron to use in the construction of a boiler to be used next the fire? A. I can only answer that by saying that there is a great difference of opinion. I did not say it. I do not think it ought to be used ordinarily." In the reports of this cause hereinbefore referred to, the facts are more fully stated.

The court, BIDDLE, J., charged the jury and answered the defendant's points as follows:

It is contended by the plaintiffs in this case that they bought a suitable boiler, which, after having been put in the place for which it was intended, in consequence of its defective material and construction, exploded, doing them great damage, for which they ask damages at your hands against the Erie City Iron Works.

That the contract was made with Mr. Shearman is not

denied.   Whether he made that contract for himself or for the Erie City Iron Works is not of the slightest importance in this case.

This boiler was sent to the plaintiffs, and they heard that it was not what they ordered and refused to receive it.   Mr. Selden, the president of the Erie City Iron Works, who made the boiler, then had an interview with Mr. Barber, one of the plaintiffs, and admitted that it was not made in accordance with the order sent to them, yet he made certain representations to Mr. Barber which induced his firm to accept the boiler. These representations it is contended were untrue, and it is for this deceit that this action is brought.

In order to make the president liable for a false representation it is not absolutely necessary to show that he knew as a fact what he stated was false; if he made a representation not knowing it to be true or without reasonable or probable grounds on which to suppose it to be true, he acted fraudulently.   When a man having no knowledge whatever on a subject, takes it upon himself to represent a certain state of facts as existing, he does so at his peril; and if it be done either to secure some benefit to himself or to deceive another he is guilty of fraud.   By assuming to have knowledge of a material fact when he is conscious he has not, and representing it as of his own knowledge when he has no knowledge, he commits a moral wrong similar in character as if he knew the representation to be untrue.   The fraudulent purpose is essential in an action for deceit and it cannot be maintained on a false representation believed to be true which is based on adequate information.

That Mr. Selden, the president of the company, represented that C. H. No. 1 iron was fully equal to flange for the purpose for which it was intended, to be put in the shell of a boiler, is not denied.   On the contrary it is contended by the company that the statement is true.   The testimony, however, is conflicting as to that, and you must decide whether it is true or not.   If it was true the plaintiff has no cause to complain on that point.   If you find it was not true, then if Mr. Selden knew it was false, or if he asserted it recklessly not knowing it to be true and without reasonable ground to suppose it was, in order to induce the plaintiff to accept it, he would be guilty of fraud.

Statement of Facts.

The plaintiffs also contend that Mr. Barber required of Mr. Selden, at the time Mr. Selden made the representation to him, that the boiler was to be as good as that described in the Heathcote contract, which called for three eighths inch iron, and that he said to Mr. Selden if it was as good as described in the Heathcote contract I shall be satisfied. Mr. Selden's representation, the plaintiffs therefore contend, applied to the thickness of the iron as well as to the question of flange and C. H. No. 1 iron. This Mr. Selden denies. He says he referred only to the stub order, which it appears does not refer to the thickness of the iron. You will therefore have to determine whether the representation of Mr. Selden referred to that point, the thickness of the iron, or not. If he did refer to that point and knew it was false, or recklessly asserted it not knowing it to be true, and without reasonable ground, he would be guilty of fraud.

If then you find that the iron in this boiler was bad, or that the boiler was defectively constructed, and that that was the cause of the accident, and if Mr. Selden knew that his statements were false, or not knowing them to be true, without reasonable or probable ground, asserted them to be true and they turned out to be false, and that on the faith of such representations the plaintiff accepted the boiler and thereby suffered the injury complained of, your verdict should be for the plaintiff.

If you should find that these matters have not been established, your verdict should be for the defendant.

If you should find for the plaintiff, the question as to the amount of damages is to be considered. You must recollect they must be what the law calls compensatory only; not speculative or vindictive; that is, not intended to punish the defendants. The true measure is the amount of money required to put the mill and machinery including the boiler in as good condition as they were before the explosion. You can also add the rental value of the mill during necessary time for making repairs.

Defendants' points:

1. There can be no recovery on any warranty or contract express or implied between the parties.

Answer: Affirmed.

2. The only ground of recovery is fraud in the statements made by Selden at his interview with Barber.

Answer: Affirmed.

3. That is, the plaintiffs to recover must satisfy the jury that Selden did not believe the statements he made to Barber were true, but intended to deceive him.

Answer: Affirmed.

4. The defendants are not liable even if the materials were defective, and if C. H. No. 1 is not equal to flange, if Selden honestly believed them to be sufficient and good merchantable iron for the purpose of being used as a boiler, and that C. H. No. 1 was equal to flange for the shell.

Answer: Affirmed.

5. The fact that Shearman may have known that the plaintiffs intended the boiler to be three eighths thick, or that it was to bear a pressure of 120 pounds, is perfectly immaterial as to the claim for deceit or fraud, even if he was the defendants' agent, unless he communicated these facts to the defendants, and they were known by Selden, at the time the representations were made, which induced the acceptance of the boiler.

Answer: Affirmed.

6. There being a written contract for the making of the boiler between the plaintiffs and Shearman, there is no evidence which warrants the jury in finding that the original contract was in fact made with the defendants.

Answer: Affirmed.

7. There is nothing in the case to warrant the inference that Selden knew that he was ignorant on the subject he spoke about, so that he can be said to have spoken about a fact of which he knew nothing.

Answer: Refused.[7]

8. There is no statement Selden is said to have made, which is material, other than that relating to the difference or want of difference between flange and C. H. No. 1, in the construction of the shell of the boiler and of the relative goodness of the boiler delivered to that ordered, and he must be assumed to be speaking of the kind of boiler he knew had been ordered, and not of another kind ordered of the agent, if a different kind was in fact ordered from the agent.

Answer: Refused.[8]

The verdict of the jury was in favor of the plaintiffs for $10,415.44. A motion in arrest of judgment having been refused and judgment entered on the verdict, the defendant company took this writ, assigning for error:

1–6. The allowance of the said amendments.[1]

7, 8. The answers to the defendant's points.[7] [8]

*Mr. Richard C. McMurtrie* and *Mr. Nathan H. Sharpless,* for the plaintiffs in error:

1. Evidently there were three possible causes of action, wholly distinct, that might arise under the alleged facts:

(*a.*) On a promise co-extensive with the duty arising from an employment such as is stated in the original counts.

(*b.*) On a promise such as is stated in the amended counts.

(*c.*) For a deceit in the representation or undertaking stated in the amended counts.

Whether the actions in (*a*) and (*b*) might be in case or in contract depends on this: Is the duty that would arise from the acts of the parties, without words, identical with those created by words or express contract? If these common-law duties are varied by the express contract, case for a tort will not lie; the action must be on the contract: Burnett v. Lynch, 5 B. & C. 609; Corbett v. Packington, 6 B. & C. 268; Brown v. Bowman, 11 Cl. & F. 11; Courtney v. Earle, 10 C. B. 73. It is certain the action for class (*c*) cannot be joined with the others: Ligge v. Tucker, 2 Jur. N. S. 1235. Until January, 1882, near eight years after the cause of action accrued, there was nothing on the record showing it was intended to sue for anything under class (*c*).

2. A suit founded on a contract cannot be changed into one in derogation of that contract: Wood v. Anderson, 25 Pa. 407. As a consequence of disregarding this rule of pleading, it was impossible to exclude evidence that proved any one count. Hence evidence of a contract as laid was admissible. The verdict was entered on that claim, yet it is clear that the trial judge meant to confine the jury to the claim for fraud. The verdict was given on all the counts; how can one say on which? Judgment must be arrested if counts are improperly joined: Steph. Pl., 96–7, 150; 1 Chitty Pl., 411; Gordon v. Kennedy, 2 Binn. 287; or if a cause of action ex contractu

has been joined with a cause of action in tort: 1 Chitty Pl., 199, 201; Jones v. Conoway, 4 Y. 110; Penn. R. Co. v. Zug, 47 Pa. 483.

3. On the merits of the case, the vital point is, that upon the only question in issue as to whether or not Selden knew that he was ignorant upon the point as to C. H. No. 1 being or not being as good as flange iron in the shell of a boiler, the references to the testimony in the charge have no bearing. Selden's knowledge would be derived from his many years experience, and would not turn upon his seeing or testing this particular boiler. Therefore, the court should not have left to the jury whether Selden spoke about a subject he knew nothing of. We were entitled to a charge that the plaintiffs' case rested on actual fraud: Cox v. Highley, 100 Pa. 252.

*Mr. Richard P. White* (with him *Mr. George H. Earle, Jr.*), for the defendants in error:

1. Whatever has been decided on one writ of error, cannot be re-examined on a subsequent writ of error in the same suit: Supervisors v. Kennecott, 94 U. S. 498; Clark v. Keith, 106 U. S. 464; Chaffin v. Taylor, 116 U. S. 567. The amendments now criticised were all granted before the first writ of error; that writ was taken because of them, and on the very grounds now stated: 102 Pa. 156. The declaration was afterwards amended by the simple addition of a scienter, and never since changed. On the second writ of error, the defendants again argued that our counts were solely in tort: 106 Pa. 125. The case has now been tried a third time, and admittedly according to the direction of this court.

2. In the height of special pleading, when justice was frequently a secondary consideration, there was a conflict in the rulings as to what constituted misjoinder. In some of the cases it was held that form was the thing to be observed, as form regulated the judgment. Another class held that not only must judgment be arrested, without regard to justice, when the names of the judgments were actually different, but also where the judgments were the same, if the plaintiff, having suffered a wrong of a double nature, might have elected, though he did not, to sue in a form that required a different

judgment. But as said by Lord ELLENBOROUGH, in Govett v. Radnidge, 3 East 67, " What inconvenience is there in suffering the party to allege his gravamen, if he please, as consisting in a breach of duty arising out of an employment for hire, and to consider that breach of duty as tortious negligence, instead of considering the same circumstances as forming a breach of promise implied from the same consideration of hire?" And it is now recommended by the courts of this country that wherever there be an election to sue in tort or in contract,. such election be used to avoid multiplicity or circuity of action, whether such causes of action in tort have ultimately arisen out of contracts or not: Schuchardt v. Allens, 1 Wall. 359; Krum v. Anthony, 115 Pa. 431; Malin v. Bull, 13 S. & R. 443; Dingman v. Amsink, 77 Pa. 114; Lane's App., 105 Pa. 60; Big. L. C. Torts, 615.

3. The legislature has passed act after act allowing amendments, culminating in that of March 14, 1872, P. L. 25. The courts have treated this legislation as remedial, and held that a party cannot by objecting after verdict upon the merits to that which was amendable, defeat the intent that such defect shall not destroy such trials on the merits: Patton v. Railway Co., 96 Pa. 174. A misjoinder of counts, being now amendable, cannot be assigned as error: Martin v. Stillé, 3 Wh. 337; H. & B. R. Co. v. McGovern, 29 Pa. 81; Burkholder v. Beetem, 65 Pa. 507; Schmidt v. Owens, 10 W. N. 5; Bolton v. King, 105 Pa. 82; Quick v. Miller, 103 Pa. 67; Grove .v. Barclay, 106 Pa. 155; Parks v. Boynton, 98 Pa. 375; Jones v. Freyer, 3 W. N. 365.

OPINION, MR. JUSTICE CLARK:

The main question presented by this record is, whether or not the court was right in permitting the plaintiffs' declaration to be amended by the additional counts filed January 10, 1882. The defendants' contention is, that the amendment should not have been allowed as, in so doing, there was a misjoinder of counts and a change in the cause of action. Both of the objections were considered by this court when the case was here before : 102 Pa. 156, and as the question is in no respect differently presented now, it may be considered as having been fully decided in our former rulings. It is proper, how-

ever, in view of the very learned and able argument now made, to state more fully the grounds upon which these rulings were made.

The action was in case. In the third count of the declaration it is charged that the defendants undertook for a certain consideration to construct for the plaintiffs, of flange iron, a boiler of certain quality and dimensions; that they did construct a boiler of different iron, which they "falsely and maliciously represented" to the plaintiffs was in every respect as strong and as good as the boiler they contracted to make; that it would carry 120 pounds of steam, etc.; that the plaintiffs relying on these representations accepted the said boiler and set it up in their mill, but that the boiler being of worthless iron was not of the quality represented, and in consequence thereof afterwards exploded, thereby causing the loss for which this suit is brought. The plaintiffs' purpose in this case without doubt was to declare in tort for the damages sustained through the defendants' "false and malicious" representations as to the quality and capacity of the boiler. The declaration was doubtless defective; it may be that it set forth no sufficient cause of action, in any of the counts, but as an action in tort was certainly in contemplation, and the plea of not guilty was entered by the defendants, it was the duty of the court, if the cause of action was not changed, to entertain a motion to amend.

The cause of action is the particular matter for which the suit is brought, and when the object of an amendment is not to forsake this, but to adhere to it, and effect a recovery upon it, it is the duty of the court, when the merits of the case cannot otherwise be reached, to permit the amendment: Rodrigue v. Curcier, 15 S. & R. 81. "For example," said this court in the case cited, "the plaintiff declares on an indebitatus assumpsit for goods sold and delivered; but finding on the trial he is disappointed on the evidence, he asks permission to add a count on a quantum meruit. The amendment should be allowed, because the substance of the action was the value of the goods sold and delivered. It may be said that this is introducing a different contract from that set out in the declaration; and true, in form, it is; but the injury done to the plaintiff is the non-payment for goods sold by them to the de-

fendant, and the additional count is only for the purpose of recovering damages for that injury. So in an action on a policy of insurance, when the plaintiff declared on losses by capture by an enemy and perils of the sea, the court permitted an amendment, by adding a count for loss by barratry. This might be called a new cause of action, but it adhered to the policy by which the defendants engaged to indemnify the plaintiff from loss by barratry, as well as by capture and perils at sea. The object of the action was to recover for a loss covered by the policy, and this amendment, not going out of the policy, was admitted." Therefore, it was held, in an action of slander, where the words spoken were so defectively set forth as not to be actionable, that the declaration might be amended by setting out a good cause of action, provided the words substituted import a charge generally the same : Proper v. Luce, 3 P. & W. 65. The cardinal rule, adhered to in all cases, is that the amendment must not introduce a cause of action substantially different : Knapp v. Hartung, 73 Pa. 290. It is error, therefore, to allow the plaintiff to add a new count for another slander, after the right of action upon it had been barred by the statute of limitations : Smith v. Smith, 45 Pa. 403. See also Trego v. Lewis, 58 Pa. 463; Kaul v. Lawrence, 73 Pa. 410; and Leeds v. Lockwood, 84 Pa. 70. In all forms of action, however, whether arising ex contractu or ex delicto, where the plaintiff has stated his cause of action defectively, he may amend his declaration at any time before or during trial : Root v. O'Neil, 24 Pa. 326.

The additional counts in this case, were upon the same "false and fraudulent" representations as to the quality and capacity of the same boiler, and for the same injury, to recover the same damages ; they were in no sense the introduction of a new or different cause of action : Erie City Iron Works v. Barber, 102 Pa. 156. The action, as we have said, was in deceit ; the express warranty set forth in the new counts, as we said when the case was here before, was averred by way of inducement merely, or rather as one of the means by which the fraud was made effective. If it had been declared upon as the subject matter of the suit, such an amendment would have been rightly refused, but it was proper to aver it, as one of the acts or declarations of the defendants in connection with the

alleged fraud. At the special request of the defendants' counsel, the jurors were plainly instructed there could be no recovery on any warranty or contract between the parties, express or implied; that the only ground of recovery was the fraud of Selden, in his interview with Barber. They were further instructed in substance, that the evidence must satisfy them, that the statements made by Selden were false, and that he knew them to be false, or that he asserted them to be true, without any reasonable or probable grounds for believing them to be so, in either case, intending to deceive and defraud the plaintiff.

But it is said that some of the counts in the declaration are for damages arising ex contractu, whilst others are joined with them for injuries ex delicto, and that there is therefore a misjoinder. It is certainly true that counts in assumpsit cannot be joined with counts in deceit; they are radically inconsistent; and as the rights incident to the judgment in these respective forms of action differ, the joinder of them must necessarily produce incongruous results: McNair v. Compton, 35 Pa. 23 ; Wood v. Anderson, 25 Pa. 407 ; Finley v. Hanbest, 30 Pa. 195.

The defendants might have taken advantage of the misjoinder by withdrawing the plea and filing a special demurrer, but they did not; they stood upon their plea of not guilty, and went to trial upon the merits. The counts in assumpsit might have been stricken off at the trial: Penn. R. Co. v. Zug, 47 Pa. 480 ; Noble v. Laley, 50 Pa. 281 ; but as the court in the clearest manner withdrew them from the consideration of the jury, the defendants suffered no harm.

We agree with the learned judge of the court below, that after a trial on the merits, no defect of pleading which could have been raised by a demurrer will be fatal to the judgment, unless it is shown to have injuriously affected the trial. The proper amendment will be considered to have been made. This is the outgrowth of the policy which has prevailed in practice in the allowance of amendments. The effect of our statutes has been to give more prominence to the trial of the cause had on its intrinsic merits, in the interest of a rational and speedy administration of justice, than to the exact and precise observance of the artificial forms originally devised for this purpose,

but which are supposed in some instances at least to defeat rather than to promote the ends of justice.

What we have said disposes of all the assignments of error, excepting the seventh and the eighth, and these, we think, have no merit. A careful examination of the evidence satisfies us that there was abundant evidence from which the jury was justified in inferring that Selden knew he was misrepresenting the quality of the iron, and the strength and capacity of the boiler made from it. His testimony on this subject was inconsistent and to some extent contradictory, and, apart from all the other evidence in the cause, the inference stated might well be deduced therefrom. The eighth assignment of error is based upon the refusal of a point which was not stated in accordance with the facts. Selden's statements, as proved, contained much more that was material than a comparison between flange iron and C. H. No. 1. If Mr. Barber is believed, Selden knew of the Heathcote proposition at the time these statements were made, and in view of all the evidence on the subject, we think there was a question of fact for the jury as to what order he referred.

Upon an examination of the whole case we are of opinion, that as the cause was fully and fairly tried on its merits, the judgment should be affirmed.

Judgment affirmed.