# Pittsburg Coal Company of Pennsylvania *v.* Cook, Appellant.

*Vendor and vendee—Deed—Acreage—Estimate—Contract—Evidence—Amendment.*

A vendor and vendee of coal were both aware that the acreage mentioned in the deed of conveyance was only an estimate; it was agreed, therefore, that the coal should be surveyed, and if the acreage fell short, deduction was to be made from the purchase price at a certain amount per acreage, and if it overran, the surplus was to be paid for at the same rate. The agreement was set forth in a settlement certificate, and the deed was then delivered and the purchase money paid. A subsequent survey by the vendee showed that there was a deficiency in the acreage. A suit was then brought against the vendor to recover for the deficiency, but in this suit the settlement certificate was not set forth or annexed to the statement of claim. At the trial there was evidence that the parties had selected surveyors and met at the mine to survey the coal and determine the acreage. One of the defendants testified that he did not regard himself as called upon, under the contract, to make the survey and calculation; but this objection was not made until after a dispute as to the method of calculation had arisen. There was testimony of a conversation between one of the defendants and the attorney for the purchasers at the time the contract was signed, to the effect that the price per acre fixed for the coal was a mere formality. *Held,* (1) that the settlement certificate was properly admitted in evidence as the statement of claim would be considered as amended by incorporating in it the certificate after a trial on the merits; (2) that the parties by their action had so construed the contract as to show that a survey was to be made after the delivery of the deed, and a deficiency accounted for if discovered; (3) that no weight was to be given to the statements of the defendants as to their understanding of the agreement; and (4) that a verdict and judgment for the plaintiff for the amount of the deficiency should be sustained.

Argued Nov. 6, 1907. Appeal, No. 116, Oct. T., 1907, by defendants, from judgment of C. P. No. 2, Allegheny Co., July T., 1904, No. 803, on verdict for plaintiff in case of Pittsburg Coal Company of Pennsylvania v. J. V. H. Cook, R. M. Cook and S. C. Cook, Partners, as J. V. H. Cook & Sons. Before MITCHELL, C. J., BROWN, POTTER and STEWART, JJ. Affirmed.

Assumpsit to recover for a deficiency in coal acreage. Before Shafer, J.

The facts are stated in the opinion of the Supreme Court.

Defendant presented the following points:

1. That under the pleadings and evidence in this case the plaintiff cannot recover, and their verdict should be for the defendants. *Answer :* Refused. [6]

3. From the pleadings and evidence in this case there is shown the following :

(a) Each of the contracts of July 11, 1899, was for the sale of the unmined coal in gross, within a tract of coal land operated at the time as a coal mine, together with all the mine equipment, including tipple, tramways, tracks, cars, miners' houses, and all personal property operated and used therewith, as enumerated in each contract, for a gross sum, and without any covenants or warranty as to the quantity of unmined coal.

(b) The words in the schedule attached to the contract as to the Allison mine, to wit : " coal unmined about 325 acres available coal," are merely descriptive of the unmined coal within the tract, and did not import a covenant or warranty as to the quantity of such coal, nor that the unmined coal could all be mined and taken out at a profit, but embraced all the unmined coal which might be reached and removed, whether capable of being mined at a profit or not.

(c) The survey provided for in each contract contemplated a completed survey made jointly by the vendors and purchaser, or made by one party after due notice to the other and an opportunity to attend ;—a survey which should embrace all the unmined coal owned by the vendors within the limits of the body or tract and available for mining and removal whether at a profit or not, and such survey that any competent civil engineer might ascertain accurately the excess or deficiency to be accounted for and added to or deducted from the consideration before the same shall be payable in full.

(d) And there is no averment and proof of fraud and deceit on the part of the defendants, or of mutual mistake on the part of both parties.

Wherefore, the undisputed evidence showing that the entire purchase money was voluntarily paid to the defendants

and the bill of sale and conveyance of date September 27, 1899, delivered, on November 4, 1899, without such a survey as required having been made before that date, and, the final deed of date July 10, 1903, having been accepted on July 17, 1903, and this suit brought November 26, 1904, without any averment and proof of fraud and deceit upon the part of the defendants, the action cannot be maintained and the verdict should be for the defendants.  *Answer :* Refused. [7]

4. If the jury believe from the evidence that it was agreed between J. V. H. Cook, representing the defendants, and J. G. McConnell, Esq., representing the purchaser under the contract, that the insertion of the sum of $200 for each acre of coal owned and $100 for each acre of surface, in the parts of the contracts providing for a survey, were merely formal or immaterial, and would cut no figure in the matter, and that J. V. H. Cook would not have signed said contracts but for such agreement, then, if the jury also find that all the purchase money was voluntarily paid to the defendants on or before November 4, 1899, and the bill of sale and deed of date September 27, 1899, were then delivered to the plaintiff, without a survey having been made, and there being no averment and proof of fraud and deceit upon the part of the defendants, the plaintiff cannot recover, and the verdict should be for the defendants.  *Answer :* Refused. [9]

5. The terms of the settlement certificate of September 27, 1899, providing, inter alia, for the payment of the consideration under the contracts of July 11, 1899, contemplated an adjustment of the consideration on a survey to be made before the defendants were entitled to the payment of the said consideration, and said certificate of settlement did not create any covenant as to quantity of coal in said mines upon which the plaintiff can, after payment of the consideration, recover back any portion thereof because of any deficiency in the acreage, no fraud on the part of the vendor or mutual mistake between the parties to this action having been averred or proved.  *Answer :* Refused, because while dated September 27, it was not delivered nor intended to be delivered until the deed was delivered being put in escrow along with the deed—and the deed was not to be delivered till the purchase money was paid. [4]

6. That if the jury find from the evidence as to the survey made. by the plaintiff and the results reached in the calculation of Mr. Donalson made at the time of the survey, it has appeared that. from said calculation there were excluded bodies. of unmined coal owned by the defendants, which were accessible for mining and were within the boundaries of the coal conveyed, without showing the quantities so excluded, then the calculation is vitiated, the plaintiff cannot recover, and the verdict should be for the defendants. *Answer:* Refused. [16]

7. The evidence showing that by the bill of sale and deed of date September 27, 1899, and the deed of date July 10, 1903, delivered on July 17, 1903, all the unmined coal owned by the defendants in both the Enterprise mine and the Allison mine was conveyed to the plaintiff, and the plaintiff not having shown the acreage of unmined coal within the coal territory comprising the Enterprise mine conveyed by said bill of sale and deeds, the plaintiff cannot recover, and the verdict should be for the defendants. *Answer:* Refused. [18]

Verdict and judgment for plaintiff for $8,500.   Defendants appealed.

*Errors assigned* among others were (1) admitting in evidence settlement certificate, and (4, 6, 7, 9, 16, 18) above instructions, quoting them.

*Boyd Crumrine*, with him *E. E. Crumrine* and *J. P. Patterson*, for appellants.—The money was voluntarily paid-and cannot be recovered : Murphy v. Hubert, 16 Pa. 50 ; Light v. Stoever, 12 S. & R. 431 ; Ludlam's Est., 1 Pars. 116 ; Edgar v. Shields, 1 Grant, 361; Christ Church Hospital v. Phila. County, 24 Pa. 229 ; Gaw v. Wolcott, 10 Pa. 43 ; Dawson v. Tibbs, 4 Yeates, 349 ; Greenwalt v. Horner, 6 S. & R. 71 ; Von Storch v. Griffin, 77 Pa. 504 ; Bldg. Assn. v. McKnight, 35 Pa. 470 ; Hopkins v. West, 83 Pa. 109 ; Heath v. Page, 63 Pa. 108.

The plaintiff, having purchased certain operating coal mines, in gross, described, only, as containing about so many acres of unmined coal, but with no covenant as to quantity or contents, for a gross consideration, but with privilege of a survey and

an addition or deduction for an excess or deficiency at so much per acre, and having paid the consideration in full and accepted the defendants' sufficient deeds, without any survey until after such payment and acceptance, the plaintiff—even with the certificate of settlement of date September 27, 1899, in evidence—should not have been allowed to recover : Smith v. Evans, 6 Binn. 102 ; Boar v. McCormick, 1 S. & R. 166 ; Frederick v. Campbell, 13 S. & R. 136 ; Cronister v. Cronister, 1 W. & S. 442 ; Dickinson v. Voorhees, 7 W. & S. 353 ; Haggerty v. Fagan, 2 P. & W. 533 ; F. & M. Bank v. Galbraith, 10 Pa. 490 ; Riddle v. Foster, 32 Pa. 163 ; Coughenour v. Stauft, 77 Pa. 191; Kreiter v. Bomberger, 82 Pa. 59 ; Landreth v. Howell, 24 Pa. Superior Ct. 210 ; Manson v. Thacker, L. R. 7 Ch. D. 620.

*A. M. Neeper,* with him *C. M. Johnston* and *C. E. Woods,* for appellee, cited as to amendment : Erie City Iron Works v. Barber, 118 Pa. 6 ; Chapin v. Cambria Iron Co., 145 Pa. 478.

OPINION BY MR. JUSTICE POTTER, January 6, 1908 :

In the present case the contract for the sale of the Allison Mine contemplated the conveyance of about 325 acres of available coal, but when the contract was made both parties were aware of the fact that this was only an estimate, and it was therefore agreed that the coal should be surveyed, in order to determine accurately the amount of acreage. If it fell short of the stipulated amount, deduction was to be made from the purchase price at the rate of $200 per acre, and if it overran, the surplus was to be paid for at the same rate. If this survey had been made before the delivery of the deed, and the payment of the purchase money, there could have been no question whatever of the right to make deduction for the deficiency in the amount of the coal. But by reason of the fact that a deed was prepared and delivered by the vendors, and the purchase money was paid to them before the surveying was done, the appellants contend that they are released from any obligation to make good the amount of coal stipulated for, as the basis of the contract. As the trial judge says, if the original contract stood alone, either party desiring to have the benefit of the survey and adjustment of the acreage, must

have made application therefor, prior to the passing of the
deeds and the payment of the price. But for reasons satis-
factory to themselves, the parties to the agreement chose not
to delay the entire settlement until the surveys could be made,
but instead adjusted between themselves everything but the
amount of the acreage, and that was held open by the execu-
tion of a settlement certificate by the defendants in which it
was expressly agreed that such adjustment as might be nec-
essary upon the property conveyed being surveyed should be
held open for future settlement. Upon this express condition
then, the deed, bond, bill of sale, certificate, etc., were deliv-
ered and the purchase money paid. The trial judge, speak-
ing of the original contract and these papers, says in his
charge to the jury, you will observe that they " are all prac-
tically the same as if they were one paper, and part of these
papers is that that survey shall go on past the payment of
the money. That is practically the only matter in this case
that is very important," and he went on to say that his inter-
pretation of the papers required him to instruct the jury that
the settlement certificate required and contemplated a survey
to be thereafter made, and that the parties were to pay to each
other whatever the result of that survey might show to be
due.

Unquestionably, the trial judge was right in his construction
of the language of the settlement certificate. It is contended,
however, by counsel for appellants that as the settlement cer-
tificate was not set up in the statement of claim the plaintiff
was not entitled to prove it, or offer it in evidence as a basis
of recovery in this suit. The declaration was no doubt de-
fective in this respect, but as the cause of action here was the
deficiency in the amount of the coal which was to have been con-
veyed under the contract, and as the effect of the settlement
certificate was only to extend the time for ascertaining the
amount of the coal, and thus to preserve the rights of the par-
ties in this respect under the contract, it cannot be said to
change in any way the cause of action. It would, therefore,
have been entirely proper for the plaintiff at the trial to have
moved to amend the declaration, and for the court to have en-
tertained the motion. The propriety of such action is fully
discussed in Erie City Iron Works v. Barber, 118 Pa. 6. And

this court there further said (p. 19) : " After a trial on the
merits, no defect of pleading which could have been raised
by a demurrer will be fatal to the judgment, unless it is shown
to have injuriously affected the trial.   The proper amendment
will be considered to have been made.   This is the outgrowth
of the policy which has prevailed in practice in the allowance
of amendments.   The effect of our statutes has been to give
more prominence to the trial of the cause had on its intrinsic
merits, in the interest of a rational and speedy administration
of justice, than to the exact and precise observance of the ar-
tificial forms originally devised for this purpose."   In the pres-
ent case the defendants had, of course, full knowledge of the
settlement certificate, having executed it themselves, and they
refer to it in their affidavit of defense as providing the method
by which they were to be paid the purchase money.   If the
settlement certificate was rightfully admitted as evidence, and
we think it was, then it shows clearly by its terms a recogni-
tion by the parties of the right to have the survey made, after
the settlement, and adjustment of all other matters was made
under the original contract.   This method was a construction
by the parties as between themselves of the terms of the origi-
nal contract.   The terms of the settlement certificate not only
provided for extending the time for the survey, but the subse-
quent conduct of the parties, in selecting surveyors and meet-
ing at the mine to survey the coal and determine the acreage,
all goes to show ratification of this feature of the agreement.
As we said in Sherman v. Dental Mfg. Co., 202 Pa. 446, " the
parties themselves thus gave a practical demonstration of their
mutual understanding of the agreement, which neither one can
now be allowed successfully to dispute."   It is true that one
of the defendants tried to break the force of this acquiescence
in the arrangement for the survey by stating that he did not
regard himself as called upon, under the contract, to make
the survey and calculation.   But this objection does not seem
to have been made until after a dispute as to the method of
the calculation had arisen.   We see no error in the refusal by
the court below to attach any weight to the testimony of a
conversation between one of the defendants and the attorney
for the purchasers, at the time the contracts were signed, to
the effect that the price per acre fixed for the coal was a mere

formality. Even if the testimony was deemed sufficient in itself to go to the jury to vary the terms of the written contract, it certainly should not have been submitted for that purpose after the contract had been expressly recognized and ratified by the settlement certificate of September 27, 1899. There is no merit in the contention that the court below should have given binding instructions for the defendants on the ground that the surveys were not properly made. That was for the jury. The facts were fully developed by the testimony, and there was ample from which the jury might find whether or not there was a deficiency in the amount of available coal contracted for. Defendants had no survey made, and presented nothing to impeach the correctness of the figures of plaintiff's witnesses. The matter was properly submitted to the jury, and that body evidently used some discrimination, for the verdict was very much smaller than would have been justified by the evidence.

Our examination of the whole case leads us to the conclusion that it was fully and fairly tried upon the merits, and the judgment is affirmed.