# Rochester Borough, Appellant, *v.* Kennedy.

*Pleading—Practice, C. P.—Amendment—Cause of action—Ejectment —Adverse possession.*

1. A plaintiff may amend his declaration at any time during the trial as he pleases, provided only that he does not introduce a new cause of action.

2. A cause of action is the particular matter for which suit is brought.

3. In ejectment the cause of action is the possession of land by one to the exclusion of another entitled to the possession of it.

4. In an action of ejectment where a borough seeks to recover a small

piece of land, which is averred to be a part of an established highway, and the defendants set up a title in fee simple under certain acts of assembly, the borough will not be permitted in rebuttal under the original pleadings to show title by adverse possession for the statutory period; but it will be permitted to amend its statement and abstract of title by adding thereto an averment of adverse possession, so as to introduce evidence of title acquired by such possession. Such an amendment does not introduce a new cause of action.

*Canals—Roads and highways—Title—Exclusive occupancy by state.*

5. Where the commonwealth enters upon land and occupies it for purposes necessarily incident to the permanent operation of a canal, a title absolute and in perpetuity is vested in the commonwealth and is exclusive in character, so that there can be no joint occupancy of the land by another with the commonwealth, so as to vest in such other any title whatever. If the land so appropriated is the bed of a highway, it is freed from the incumbrance of the highway, and the borough in which it lies has no standing to maintain an ejectment for it against the successors to the absolute title of the commonwealth.

Argued Oct. 12, 1909. Appeal, No. 130, Oct. T., 1909, by plaintiff, from judgment of C. P. Butler Co., Dec. T., 1908, No. 32, on verdict for defendants in case of Rochester Borough v. Anna M. Kennedy et al. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Ejectment for land in the borough of Rochester, Beaver county. Tried by change of venue in Butler county. Before GALBREATH, P. J.

At the trial the jury returned a verdict in favor of the defendant.

On a motion for a new trial and for judgment for plaintiff n. o. v. GALBREATH, P. J., filed the following opinion:

This is an action of ejectment brought by the borough of Rochester, plaintiff, against the defendants to recover possession of a lot of ground in size about twenty by sixty-eight feet, situate in said borough, which, it is contended on part of plaintiff, is a portion of Island lane, one of the highways of said borough. By an Act of gen-

eral assembly, approved September 28, 1791, 3 Sm. L. 56, the governor of the commonwealth was empowered to direct the surveyor general to lay out or cause to be laid out into lots and out lots certain lands then belonging to the commonwealth, situate on the Ohio river and on both sides of the mouth of Beaver creek, including Fort McIntosh. This was done by Daniel Leet, whose survey of a town and out lots at the mouth of Beaver creek was confirmed by Act of assembly of March 6, 1793, 3 Sm. L. 90. By the former of said acts it was provided that "the streets, lanes and alleys of the said town and out lots shall be common highways forever." On the out lots so surveyed and laid out on the east side of Beaver creek the town of Rochester was built. It was incorporated as a borough by Act of assembly of March 20, 1849, P. L. 283. One of the highways of said town, as laid out in the Daniel Leet survey and plan, was Island lane, situate along the east bank of Beaver creek.

By an Act of assembly, approved March 27, 1824, P. L. 92, the governor was authorized and required to appoint a board of commissioners for the purpose of promoting the internal improvement of the state. This was the initial legislation looking toward the construction by the state of its system of canals. The scope of these improvements was enlarged from time to time by subsequent legislation. By the Act of February 25, 1826, P. L. 55, the canal commissioners were authorized to acquire the necessary land for the construction and operation of the canals authorized to be made, and in case of failure to agree with the owners, or in the event of their disability, to enter upon and condemn the lands and have the damages assessed in the manner therein provided, and it was further provided that on payment of such damages, "The state shall be seized of such lands as of an absolute estate in perpetuity or with such less quantity and duration of interest or estate in the same, or subject to such partial or temporary appropriation, use or occupation, as shall be required and described as aforesaid, as

if conveyed by the owner or owners." By the Act of April 9, 1827, P. L. 192, the mode of assessing damages in such cases was changed and the time within which the landowner could petition for the appointment of viewers to assess his damages was fixed at one year after the completion of the work. By the ninth section of the last mentioned act the canal commissioners were authorized "to make such alterations as may appear to be expedient in the route and location of any state, county or township road along which or in the immediate vicinity whereof the canal or any part thereof does or shall pass, and to lay out and open to such width as shall be necessary, so much of any of the said roads as shall be relocated, and such new route of any of the said roads shall be considered as a public highway, to be supported and kept in repair as other highways in this commonwealth are supported and kept in repair, and so much of the route of any road as may be altered shall be thereby vacated." By the Act of March 21, 1831, P. L. 194, provision was made for the construction of a canal or slack-water navigation "from the Ohio river, at the mouth of Big Beaver creek, up that creek to the town of New Castle."

Under these various acts of assembly the canals of the state, including the branch extending from the Ohio river to New Castle, and subsequently to Lake Erie, were constructed. In the making of said branch the Beaver creek was slack watered and utilized for a portion of the way. This necessitated the building of locks and dams. Lock number sixteen was located on the east side of Beaver creek in the town of Rochester. The highway known as Island lane, situate along the east bank of the same at this point, was utilized as a towing path for the purpose of the canal. On the east side of Island lane and immediately across from said lock number sixteen, was the lock house where the boats passing through said lock obtained their proper clearance papers. That portion of Island lane lying between said lock and lock house was thus used for the purpose of passing from the lock to the lock

house, as well as for a towing path, in the transportation of boats through said lock. The balance beams used in operating the gates of the lock extended for a considerable distance out into and across said lane, thus forming a barrier to its use as a public highway for the distance that they extended across it.

This branch of the canal was completed about the year 1835, and, at the point in question, was operated and the land was occupied in the manner above pointed out as long as the canal was in operation, which was up to the year 1871. By an Act of the general assembly, approved March 7, 1843, P. L. 36, the governor of the state was authorized to incorporate the Erie Canal Company, to which, when certain conditions had been complied with, the property and franchises of the canal extending from the Ohio river to Lake Erie were to be turned over. This was done and thenceforth all the property and rights of the state in that portion of the canal vested in said corporation as fully as it had theretofore vested in the state. In the year 1871 a judgment was entered against the Erie Canal Company in the common pleas court of Beaver county, on which an execution was issued and all the property of said company in the county of Beaver was levied upon and sold by the sheriff of said county and a deed therefor, bearing date September 2, 1871, was duly made and delivered to the purchaser, A. J. Boyle. This deed purported to convey, inter alia, the lock house at lock number sixteen, Beaver division, and the lot attached thereto, containing fifty perches of land, more or less, and being in the borough of Rochester. By subsequent conveyance all that portion of the Erie canal between the mouth of Beaver river and the lower lock at New Brighton, all within said county of Beaver, with the towing path, etc., vested in the present defendants, who, claiming that the portion of the original highway known as Island lane, which had been occupied and used as a towing path, had vested in them by reason of the things hereinbefore recited, moved said lock house number six-

teen outward, so as to occupy a portion of the land lying between said lock house and lock and within the lines of what was originally Island lane and formerly used as a towing path. Thereupon the pending action was instituted on the part of Rochester borough.

The contention of the plaintiff, under its pleadings and on the trial, was that the land in dispute, being a part of Island lane and originally dedicated to public use as a highway, the right to use it as a highway revived, according to the original grant, on the cessation of its use for canal purposes. The contention of the defendants is that the commonwealth, in taking the land for canal purposes, acquired an absolute fee therein, unvexed by any joint right in the public to use it concurrently as a highway, and that title of the same absolute and unqualified character vested in the Erie Canal Company, as the successor of the commonwealth and, by subsequent conveyance, in the defendants.

At the trial proof was made, on part of the plaintiff, of the laying out, by legislative enactment, of the town of Beaver, with its lots, streets, lanes, alleys, and out lots, including Island lane as a public highway, and that the land now occupied by the defendants is a part of Island lane, as shown by the original draft and survey. Having shown these things, the plaintiff rested. Upon part of defendants, proof was made of the various enactments looking toward the construction of the canals of the state, the creation of the board of canal commissioners, and their authority to condemn and occupy public roads, etc., for that purpose, the transfer of the Beaver division of the Pennsylvania canal to the Erie Canal Company, the subsequent sale of this property and the vesting of title in the defendants by virtue of diverse conveyances. The defendants also called a large number of witnesses to show the character of the use of Island lane at the point in dispute during the operation of the canal from its inception until the cessation of operation in 1881, when the property was sold by the sheriff. Having offered their

proofs along these lines to sustain their title, as set up in their abstract, the defendants rested their cause. The plaintiff then called a large number of witnesses to rebut the testimony offered on part of defendants, especially as to the character of the use made of Island lane during the operation of the canal, the tendency of plaintiff's rebuttal evidence being to show that the state and its successor in title, the Erie Canal Company, did not take the exclusive possession of Island lane for canal purposes, and that during the time the canal was in operation there was a concurrent use of said lane by the public as a highway. The plaintiff also offered, in rebuttal, to show that after the canal had ceased to be operated, and for more than twenty-one years prior to the bringing of this action and prior to the taking of possession by the defendants, the borough of Rochester had continuous, open, adverse possession of the premises in dispute as a highway, but as the defendants had offered no testimony as to the use of the premises after the cessation of the use of the canal, the testimony offered could not be received by way of rebuttal. Plaintiff's counsel then moved for leave to amend their abstract, so as to allege title by adverse possession for more than twenty-one years after the canal ceased to be operated. This motion, being objected to, was refused by the court, for the reason that it would introduce a new and independent cause of action, after both plaintiff and defendants had rested in chief, and would involve a trial of the case de novo on a new and distinct theory.

The case was submitted to the jury on the theory that although the presumption was that the state, in the exercise of its sovereign authority took an absolute estate, as it could, under the legislation above adverted to, in the lands permanently occupied for canal purposes, yet it was competent for it to take a less estate therein; and that in the absence of any record of condemnation proceedings the nature of and extent of its taking were evidenced by the extent and character of its occupancy of

the land in dispute; and that the presumption of an absolute estate in the land on the part of the state, and the consequent right of exclusive possession, could be overcome by proof of such use of the land as indicated that the state had taken a less than absolute estate therein; and that its possession was not exclusive, but concurrent with that of the public for highway purposes. On the case thus submitted the verdict was for the defendants.

The reasons assigned in support of the motion for new trial and for judgment, non obstante veredicto, may be reduced to three propositions, so far as they relate to the action of the court, viz.:

1. That the court erred in refusing plaintiff's motion to amend, so as to let in proof, in rebuttal, of plaintiff's claim of title by adverse possession.

2. The court erred in instructing the jury that the state was presumed to have taken title absolute to the land in dispute, and that the burden rested on plaintiff to overcome the presumption.

3. The court erred in refusing to instruct the jury that the right of the public to use Island lane as a highway, according to its original dedication, revived on the cessation of its use for canal purposes.

Taking these up in their order, it may be observed, first, that the plaintiff did not, in its statement setting forth its cause of action, nor yet in its abstract, set up any claim of title to the land by reason of adverse user. On the contrary, its whole claim of title rested on the fact of the original dedication of Island lane for highway purposes, and the contention that its use for that purpose could not be changed or permanently lost. On that theory it tried its case in chief and rested. No evidence was adduced on part of defendants which even tended to raise the question of the nature of the use of Island lane during the period intervening between the cessation of its use for canal purposes and the bringing of the pending suit. The plaintiff's offer on rebuttal, to show continuous and adverse possession for more than twenty-one years

prior to the bringing of the suit was therefore clearly not competent, as it did not tend to rebut anything whatever. The offer to amend the plaintiff's abstract and statement so as to aver title by adverse user, even if allowed, would not have rendered competent the testimony that was otherwise clearly incompetent on rebuttal. Its only effect would have been, at that stage of the case, to introduce a new cause of action. Assuming that the plaintiff did have such adverse possession for more than twenty-one years, this was a fact the discovery of which did not await the development of the trial. That it introduced a new and distinct cause of action, we think is clear, when we consider that the cause of action is, in its last analysis, that upon which the plaintiff in the action bases his right of recovery. Two elements enter into every cause of action, viz.: a right in the plaintiff and the denial or infringement of that right by the defendant. If the plaintiff has a right to possession of the premises in dispute, growing out of the original dedication of Island lane, and the defendants interfered with that right, this created a cause of action, distinct in itself. If the plaintiff's right of possession arose out of its exclusive possession for more than twenty-one years, the denial of that right would also constitute a cause of action, similar to the former, but resting on a different reason, and to be established by a different line of proof. It is not infrequently the case that several causes of action are set up in the same case, especially in ejectment. In the matter of allowing amendments, some regard must be had for orderly practice. In the present case the testimony was voluminous, requiring several days for the trial. The amendment was not asked for until both plaintiff and defendants had rested in chief after many witnesses had been examined and several days had been consumed in the trial. It was then asked for, in order to introduce, in rebuttal, evidence of adverse possession in the plaintiff, after operation of the canal had ceased, but as such testimony would not have tended to rebut anything sought to be proven by

the defendants, it could not have been received under the amendment, even if allowed, and its allowance would have been a vain thing.  To become effective, it would have meant the beginning of the case de novo, and its trial on a new and distinct ground, but if that might be done, then, also, after the defendant had made defense to plaintiff's claim of adverse possession, the plaintiff might, with equal right, ask to amend his abstract by showing title to the premises by virtue of a tax sale or otherwise, and whilst, it is conceded that the courts shall be liberal in allowance of amendment in order to exact justice between the parties litigant, yet there is a limit beyond which, we think, liberality would tend to hardship and consequent injustice.  If the plaintiff desired to try its case on a new or additional theory, the time having gone by for its doing so in chief, a voluntary nonsuit would have availed for that purpose and would have enabled it to institute its action anew, under such pleadings as would embrace every theory on which it might hope to recover.

Second: Coming now to a consideration of plaintiff's contention, that the court erred in instructing the jury that the interest acquired by the state in the land in dispute was presumed to be an absolute estate in fee simple, and that the burden of showing that a less or qualified estate was taken, rested upon the plaintiff, it may be observed that it has been settled by a long line of decisions that the land acquired by the state for permanent use in the construction and operation of its canals, under the several acts of assembly authorizing it thereto, was an absolute estate in perpetuity: Com. v. McAllister, 2 Watts, 190; Haldeman v. Railroad Co., 50 Pa. 425; Craig v. Mayor, etc., of Allegheny, 53 Pa. 477; Robinson v. West Penna. R. R. Co., 72 Pa. 316; Penna. & N. Y. Canal & R. R. Co. v. Billings, 94 Pa. 40.

The act of February 25, 1826, above referred to, in its eighth section provides: "That it shall and may be lawful for the said board, or a majority of them, to agree with

the owner or owners of any land, through which the said canal is intended to pass, for the purchase, use and occupation thereof, on behalf of the state, and in case of disagreement, or in case the owner or owners thereof shall be feme covert, under age, non compos, out of the state or county," to make application to a justice of the peace, who shall issue his warrant to the sheriff of the county to summon a jury of eighteen inhabitants of the county to assess the damages that might accrue to the landowner. It is also provided that "upon every such valuation the jury is hereby directed to describe and ascertain the bounds of the land by them valued and the quality and duration of the interest and estate in the same, required by the said board for the use of the state, and their valuation shall be conclusive on all persons and shall be paid for by the said board to the owner or owners of the land or his, her or their legal representatives, and on payment thereof the state shall be seized of such lands as of an absolute estate in perpetuity, or with such less quantity and duration of interest or estate in the same, or subject to such partial or temporary appropriation, use or occupation as shall be required and described, as aforesaid, as if conveyed by the owner or owners."

The proceeding thus provided for was modified by the Act of April 9, 1827, P. L. 192, relating to the further extension of the Pennsylvania canal, wherein it is enacted, in sec. 8 of said act: "That if any person shall consider himself aggrieved by reason of the canal passing through the lands of which he is owner, or by interfering in any manner with his rights of property, he may, at the completion of the work, thereupon, or within one year thereafter, petition the court of quarter sessions of the county in which the damage has been committed and the said court shall appoint five reputable citizens" to view the premises and report such damage, if any, as they, or any three of them, shall think the owner has sustained by reason of said canal.

The differences in these two modes of procedure to

which we would call attention are these: The former was evidently intended to precede the occupancy of the land, as it relates to "any land through which the said canal is intended to pass." It also required the boundaries of the land to be taken and the quality and duration of the estate therein to be ascertained and reported. The proceeding provided by the latter act, however, could not be instituted until the completion of the work or within one year thereafter, and hence not until after the state had entered upon and constructed the canal through the land. Instead of determining in advance the boundaries of the land to be taken and the duration and quality of the estate therein, it contemplated an assessment of damages for the lands already actually taken and occupied, the boundaries of which and the nature of the estate therein and occupancy thereof would be then best evidenced by what appeared on the ground. This difference becomes important in this, that under the act of 1827, the state could enter upon the land without any prior proceeding of any sort, and its title, we may assume, was complete, even if no agreement were thereafter entered into with the owner, or if the owner failed to institute his proceeding within the year after the work was completed or at all. The title of the state grew out of the fact of its entry upon the land without more on its part, and without any proceeding instituted for the assessment of damages, and without any record of its entry or of the extent of its taking. These differences are adverted to and commented upon in Com. v. McAllister, 2 Watts, 190, as follows: "By the Act of April 9, 1827, the viewers are not to be called upon to view the ground and make report until the work of the canal has been completed through the land of the applicant. The canal being finished through the land, it is obvious then that the state has no use, after that, for any part of the land except that upon which the canal has been located and made, which is necessarily wanted in perpetuity. The use to which it has been appropriated by the state is a sufficient indication of the quality and

duration of interest and estate that was required by her in it, and the applicant has clearly a right to claim compensation for the fee simple in it—to set it forth by metes and bounds and the quality and duration of interest and estate which the canal commissioners or state had the use of in making the canal would be perfectly useless." See also Haldeman v. Penna. R. R. Co., 50 Pa. 425.

As the Beaver branch of the Pennsylvania canal was not authorized until by Act of assembly of March 21, 1831, P. L. 194, it is evident that the entry upon and appropriation of the lands in question were under the provision of the said act of 1827, and that the very fact of such entry and appropriation of the land in question for canal purposes, without more, vested title in the state, and that the character of its title was determined by the nature of its occupancy and use. When such occupancy was of a temporary character, connected only with the construction of said canal, it passed away when the work of construction was completed, but when it was for a permanent purpose, necessarily connected with the maintenance and operation of the canal, the estate acquired for such purposes was necessarily an absolute estate in perpetuity. It would seem necessarily to result from this that the mere entry of the state upon the land in question and the use of it for a purpose essentially and permanently connected with the operation of the canal gave rise to a presumption of an absolute and exclusive title in the state in perpetuity, and all the cases seem to rest upon this presumption not only as to the character of the title, but also as to the extent of the land taken.

In Pennsylvania Canal Company v. Harris, 101 Pa. 80, the court says: "The purpose for which a canal is designed and its practical enjoyment requires not only the ground covered by water and banks of sufficient strength to confine the water in place, but also a towing path on one side on which horses may travel, and a berme bank on the other side against which boats may rest and to which they may be tied. The presumption is that the

state took possession of land of a width necessary for the reasonable enjoyment of all rights appertaining to a canal. This presumption stands until removed by evidence of actual possession taken of less ground."

In the case of Wyoming Coal & Transportation Co. v. Price, 81 Pa. 156, the court, in its consideration of the question of the character of the title acquired by the state in the construction of its canals, says: "The case of Union Canal Company v. Young, 1 Wharton, 410, also shows that when land is procured for the building of a canal thereon the presumption is that the right of soil was acquired and not a mere easement thereon." In the case of Craig v. The Mayor of Allegheny, 53 Pa. 477, Mr. Justice AGNEW, writing the opinion of the court, says: "In Haldeman v. Pennsylvania Central R. R. Company, 14 Wright, 425, it was determined that the land taken under the act of 1826, providing for the permanent use of the canal, is held by the Commonwealth absolutely and in perpetuity; the Commonwealth being a corporation of the highest and most indestructible kind, her estate in the land is necessarily a fee simple." And again, in the same case, it is said that "in establishing a great and permanent work, to endure forever, as it was then supposed this canal would, the Legislature contemplated an ownership of the canal unembarrassed by private rights, such as a mere easement for passage would leave in the owner. To hold her canal by interrupted links of absolute ownership would be inconvenient and uncertain." In the case of Robinson v. West Penna. R. R. Co., 72 Pa. 316, where land excepted from a grant to the commonwealth for canal purposes was afterwards entered upon and appropriated by the state for the purpose of constructing a basin, the court says: "There can be no doubt of the right of the commonwealth under the Acts of February 25, 1826, P. L. 55, and April 9, 1827, P. L. 192, to take the land for the purpose of constructing the basin; nor of the owner's right to have the damages which he has sustained by reason thereof assessed under the

provision of the latter Act, but the right of the Commonwealth to the land so taken was an absolute estate in perpetuity—and could not be defeated or impaired by the owner's neglect or refusal to make application for the assessment of his damages within the time limited by the Act."

If, then, the mere entry of the state upon land and its occupancy for purposes necessarily incident to the permanent operation of the canal invested the state with a title absolute and in perpetuity, it is a necessary deduction and hence to be presumed that when such entry and occupancy appear as in the present case, the title is of that high character, and is absolute, then also exclusive in the character of the right of possession which follows the estate.  Otherwise we would have the anomaly of the state which is a corporation of sovereign capacity and authority, subjected to a joint occupancy, under a claim of right, with others, in land in which it has been invested with an absolute estate.

On the trial of the case the jury was instructed that the presumption is that whatever land the state occupied in the operation of the canal it took an absolute estate therein in perpetuity unless the testimony indicated that a less than absolute estate was taken, and that the presumption in favor of an absolute and exclusive taking may be overcome by testimony showing that the state did take a less than an absolute and unqualified estate in the land in controversy.  The submission of the case in this form was precautionary.  On further examination we are persuaded that the theory upon which the case was submitted cannot be sustained, but the fallacy of that theory was not prejudicial to the plaintiff.

In the case of Pennsylvania R. R. Co. v. Freeport Borough, 138 Pa. 91, a case very similar in principle to the one at bar, it appeared that an alley of the borough, extending along the east side of the state canal, had been used as a towing path during the time the canal was in operation.  Houses and other erections were constructed on the lots abutting said alley on the side opposite the

canal. The alley was used as a means of ingress and egress to and from these structures. The canal property subsequently vested in said railroad company, which located its original tracks on and along the land occupied by the basin of the canal. Through time it became necessary to lay down an additional track along the east side of said original track on the land which constituted the said alley. The borough authorities, claiming the alley as a highway of the borough, sought to restrain the railroad company by injunction. The court below, in its opinion refusing a preliminary injunction, the refusal of which was affirmed by the Supreme Court, for the reasons given in said opinion, uses this language concerning the use of the alley by the public during the time it was used as a towing path: "This use of the towing path was certainly acquiesced in by the canal company and no difference how long such use had continued or how great it may have been, no rights of absolute user could have accrued, either to the public or to the owners or occupiers of the lots, the property to the canal and its appurtenances being vested in the commonwealth. . . . Whether or not there had been a previous condemnation for the state, it does not appear. The presumption is that there was." And again the court says: "Now, whilst the canal was in operation, the necessities for the alley were in part supplied by the consentable use and enjoyment of the towing path between those streets, but this enjoyment was only permissive."

Applying the reasoning in this case to the one in hand, it means that the concurrent use of Island lane as a highway, had such been found, must be viewed as permissive, and not of right. We think, therefore, that the instruction given to the jury, that an absolute and exclusive right in the state must be presumed, was not erroneous. Any concurrent use of the towing path by others during the time the canal was in operation was permissive and not a matter of right.

The further contention, that the court erred in refus-

ing to instruct the jury that the right of the public to use Island lane as a highway according to its original dedications revived on the cessation of its use for canal purposes, remains to be considered. In passing upon the question thus raised, it would seem to be a safe postulate that the commonwealth, in the exercise of its plenary power over the highways of the state, may, either immediately, by legislative enactment, or mediately, through agencies exercising delegated authority, both create and destroy. If this be correct, it would seem necessarily to result that what it can create and may destroy, may be by it diverted from its original use to some other. It can scarcely be thought that the commonwealth, by reason of its dedication of Island lane as a highway, thereby reduced itself to a condition of impotence to thereafter deal with it in such a way as to change or abrogate that use. Island lane did not become inviolate in character by reason of having been originally dedicated by the state to public use forever. This very question was raised in respect to another highway in the same plan of lots, in the case of Com. v. Beaver Valley R. R. Co., 222 Pa. 220, wherein the court below, in disposing of that question, says: "But it is suggested that Fifth street is peculiar in its relation to the Commonwealth, in view of the fact that it was dedicated as a 'common highway' under and in pursuance of the act of 1791, supra. We fail to see how this fact can in any wise interfere with the operation of the admitted general principle of law that the sovereignty of public roads remains in the Commonwealth; the fact that the Commonwealth has dedicated the street in question to public use does not lessen its control over it or prevent it from exercising the same sovereignty it admittedly would have if the street had been dedicated by some one else; we can see no force in this suggestion." Whilst, in the case of highways dedicated to public use as a part of a plat of lots which have become the property of private owners who have purchased with reference thereto, the highways so appear-

ing cannot be closed up against their consent, for the reason that the right is wholly distinct from the right to have the public character of such ways maintained. As to that, the public character of such highways may be relinquished at any time by proper proceedings instituted and carried on through the agencies to which authority in such cases has been delegated. In respect to a change in their use and ownership, public highways, created by dedication or arising by prescription, or springing either mediately or immediately from legislative enactment, all of which are artificial, both in their creation and location, are different, as we take it, from streams or other bodies of water, which are navigable in fact, and are destined by nature to be highways, according to their kind. The former, being artificial, may be changed or vacated and returned to private use, whilst the latter being fixed and immovable, are held in trust for all the people, and neither the waters nor the lands covered thereby can become the subject of private ownership. Moreover, in the case of navigable waters so held in trust, no individual has that specific interest therein, nor in the land covered thereby which could become the basis of a claim for damages, were it sought to change the use thereof through the exercise of the right of eminent domain. Whilst in the case of Island lane, every owner of a lot which was a part of and purchased with reference to the plot or plan of lots of which it was a part, had such an interest therein, we think, as would have formed a basis for damages when said lane was taken for canal purposes.

These observations are made by reason of the suggestion advanced by plaintiff's counsel, at the trial that if Island lane could become the subject of private ownership, by virtue of the entry of the state upon it for canal purposes and the subsequent sale thereof as a part of the property of the Erie Canal Company, then also, the land covered by the waters of Beaver creek would be reduced to private ownership, inasmuch as that stream was also utilized for canal purposes.

If, then, the commonwealth did not, by reason of the dedication of Island lane to be a highway forever, thereby divert itself of its authority to thereafter deal with it as with any other highway of the state, it would seem to follow that in the exercise of that authority it could retake and appropriate it for another use, as it did when it entered upon it for canal purposes, thereby acquiring an absolute estate therein.

The contention that the public right to use Island lane as a highway revived after the cessation of its use for canal purposes is wholly inconsistent with the fact of an absolute estate therein which was secured by the commonwealth by virtue of its entry thereon for canal purposes. The effect of such entry was to wholly destroy or absorb any and every claim thereto or therein. The estate acquired by the commonwealth being absolute and in perpetuity, no outstanding right or estate could be in abeyance awaiting its termination. In the very nature of the case it was otherwise, and the state being the absolute owner of the fee could transfer its title to another, as it did when its ownership of the canal was transferred to the Erie Canal Company, and having become the property of said company, it became subject to be taken in execution and sale as any other property, and when sold became the property of the owner, to be turned into such lawful use as he might desire to make of it.

For the reasons herein given the rule for new trial is discharged and motion for judgment, non obstante veredicto, is refused.

Plaintiff appealed.

*Errors assigned* were (1) refusal of amendment; (2) refusal of binding instructions for plaintiff; (13) refusal of motion for judgment for plaintiff non obstante veredicto.

*Wm. A. McConnell*, with him *George A. Baldwin* and *S. F. & A. L. Bowser*, for appellant.—It will be admitted that the allowance of an amendment is a matter of right

and not of discretion. Also that any amendment may be made at any stage of the proceedings, so long as the cause of action remains substantially the same: Smith v. Smith, 5 Pa. 254. Also that the cause of action "is the particular matter for which the suit is brought": Erie City Iron Works v. Barber, 118 Pa. 6; Meade v. Clarke, 159 Pa. 159.

As to the instruction to the jury, that the interest acquired by the state in, the land in dispute, was presumed to be an absolute estate in fee simple, and that the burden of showing that a less estate was taken, rested on the plaintiff, we think the court erred:

(a) Because there was no evidence of an actual taking by the state.

(b) Because there was no actual canal at this point, only a slack-water navigation of the Beaver creek.

(c) Because the land in question, at the time of the establishment of the slack-water navigation at this point was a public highway and there was no necessity for an absolute taking by the state: Penna. R. R. Co.'s App., 115 Pa. 514; Monongahela Navigation Co. v. Coons, 6 W. & S. 101; Susquehanna Canal Co. v. Wright, 9 W. & S. 9; Cook v. Burlington, 30 Iowa, 94.

The right of the public to use Island lane as a highway according to its original dedication, revived on the cessation of its use for canal purposes: Waterworks Co. of Indianapolis v. Burkhart, 41 Ind. 364; Haldeman v. R. R. Co., 50 Pa. 425; Nelson v. Fleming, 56 Ind. 310; Cromie v. Wabash & Erie Canal, 71 Ind. 208; Frank v. R. R. Co., 111 Ind. 132 (12 N. E. Repr. 105); Logansport v. Shirk, 88 Ind. 563; Fort Wayne v. Coombs, 107 Ind. 75 (7 N. E. Repr. 743); Lehigh Valley R. R. v. Orange Water Co., 42 N. J. Eq. 205 (7 Atl. Repr. 659); Jersey City v. Morris Canal & Banking Co., 12 N. J. Eq. 547.

*T. C. Campbell*, with him *Hice, Morrison, Reader & May*, for appellee.—The amendment was properly re-

fused: Hartman v. Keystone Ins. Co., 21 Pa. 466; Wilhelm's App., 79 Pa. 120; Royse v. May, 93 Pa. 454; Noonan v. Pardoe, 200 Pa. 474; Duncan v. McCullough, 4 S. & R. 480; Frederick v. Gray, 10 S. & R. 182; Insurance Co. v. Bair, 87 Pa. 124; Ulysses Elgin Butter Co. v. Ins. Co., 20 Pa. Superior Ct. 384; Lauer v. Yetzer, 3 Pa. Superior Ct. 461.

The borough of Rochester, as such, has no right or title whatever. It has no property in the locus in quo, but as a representative of the public, under the decisions in Pennsylvania and other states, it has the right to maintain this action of ejectment, because the possession of the locus in quo is necessarily involved in the right which it seeks to maintain: O'Neil v. McKeesport, 201 Pa. 386.

In the state of Pennsylvania the right of highway resides in the commonwealth, and there alone. The right can never be exercised by any other person, natural or artificial, unless there be a delegation of power from the state to such natural or artificial person: In re Phila. & Trenton R. R. Co., 25 Whart. 43; Com. v. R. R. Co., 27 Pa. 339; Cleveland, etc., R. R. Co. v. Speer, 56 Pa. 325; McGee's App., 114 Pa. 470; Baird v. Rice, 63 Pa. 489.

The commonwealth has destroyed the highway asserted by the plaintiff to exist at and upon the locus in quo: Williamsport v. R. R. Co., 8 Pa. C. C. Rep. 350; Penna. R. R. Co. v. Freeport Boro., 138 Pa. 91.

OPINION BY MR. JUSTICE BROWN, October 17, 1910:

The second section of the Act of May 8, 1901, P. L. 142, relative to verdicts and judgments in actions of ejectment and regulating procedure therein, provides that "in all actions of ejectment hereafter to be brought, the plaintiff shall file a declaration, which shall consist of a concise statement of his cause of action, with an abstract of the title under which he claims the land in dispute, and in addition to the plea of 'not guilty,' now required by

law, the defendant shall file an answer in the nature of a special plea, in which he shall set forth his grounds of de-- fense, with an abstract of the title by which he claims; and no action of ejectment shall be considered at issue until the plaintiff's statement and the defendant's plea and answer shall be filed, nor shall any evidence be received on the trial of said action of any matter not appearing in the pleadings, subject to the power of amendment." This ejectment was instituted by the borough of Rochester to recover a small piece of land which it alleges is part of Island Lane, one of its highways. The averment in the statement upon which it went to trial is that it claims title to the land as a part of Island Lane, one of its public highways, under and by virtue of several acts of assembly, as set forth in its abstract of title. Its whole claim of title, as set forth in its statement, rests on an alleged original dedication of Island lane for highway purposes. The answer of the defendants denies that the land described in the statement constitutes any part of the said highway, or of any other in the said borough, and they claim title to it by virtue of various acts of assembly set forth in their abstract. On the trial the plaintiff endeavored to sustain its title as set forth in its statement and abstract, and, having rested, the defendants proceeded to show a title in fee simple in themselves under the acts of assembly referred to in their abstract. The borough in rebuttal then offered to show title acquired by continuous, open and adverse possession for more than twenty-one years prior to the institution of the suit. This offer was disallowed for the reason that it would not rebut anything that had been shown by the defendants and could not be received as evidence because it related to a matter not appearing in the pleadings. This ruling was correct. A motion was subsequently made by the plaintiff to amend its statement and abstract of title by adding thereto an averment that the lands in suit had been, for more than twenty-one years prior to the institution of the same, and prior to the time

that defendants took possession of it, thrown open to the public and had been continuously, openly and adversely used and occupied for all ordinary public purposes. The amendment was refused, and the first question raised on this appeal is as to the right of the plaintiff to make it.

A plaintiff may amend his declaration at any time during the trial as he pleases, provided only that he does not introduce a new cause of action: Hartman v. Keystone Insurance Co., 21 Pa. 466; Root v. O'Neil, 24 Pa. 326; Knapp v. Hartung, 73 Pa. 290; Erie City Iron Works v. Barber, 118 Pa. 6. The amendment which the plaintiff below asked leave to make was refused because, in the opinion of the learned trial judge, it would have introduced a new and independent cause of action. A cause of action is the particular matter for which suit is brought: Erie City Iron Works v. Barber, supra. In ejectment the cause of action is the possession of land by one to the exclusion of another entitled to the possession of it. In the case at bar the particular matter for which the plaintiff sued was the possession of land particularly described in the original statement, and by its amendment it did not seek to change the purpose of its suit. If the amendment had been allowed, the same question—the right of the plaintiff to the possession of the land described in the original statement—would have remained for the jury's determination. The plaintiff's cause of action, as laid in its præcipe and statement, was the defendants' possession of its property particularly described and, under the amendment, there would have been the same complaint. The proof upon which the plaintiff would have had to rely to support its title and right of possession would have been different under the amendment; but that was all. It would still have stood upon the same cause of action— the defendants' possession of its land. This distinction was evidently overlooked, and the refusal to allow the amendment improperly followed. As it should have been allowed on the usual terms, the first assignment is sustained.

The other questions raised by the remaining assignments were all correctly disposed of in the learned and exhaustive opinion discharging the rule for a new trial and overruling the motion for judgment for the defendants n. o. v.

Judgment reversed and a venire facias de novo awarded.